UNITED STATES BANKRUPTCY COURT
Northern District of Alabama, Eastern Division

| | | |
|---|---|---|
| IN RE: | ) | CASE NO.: 12-41045-JJR13 |
| ANTOINE THOMAS, | ) | |
| | ) | CHAPTER 13 |
| Debtor. | ) | |

| | | |
|---|---|---|
| SENSIBLE LOANS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | AP NO.: 12-40029 |
| | ) | |
| ANTOINE THOMAS | ) | |
| a/k/a THURMAN THOMAS, and | ) | |
| DORELLE THOMAS, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

Plaintiff-creditor, Sensible Loans, Inc. ("Sensible") made a $15,000 loan to Antoine Thomas (the "Debtor") and his wife, Dorelle Thomas ("Mrs. Thomas" and together with the Debtor, the "Defendants"). The loan was secured by a nonpurchase-money first mortgage on the Defendants' home. In its complaint, Sensible is seeking a judgment declaring that its mortgage is not subject to rescission, despite an admitted error in its initial disclosures made to the Defendants pursuant to the Truth in Lending Act (15 U.S.C. § 1601 *et seq.* and herein "TILA"). Sensible asserts that its error was unintentional and should be excused under the "bona fide error" exception found in 15 U.S.C. § 1640(c). In the alternative, Sensible seeks a declaration that a rescission of the loan transaction may occur only upon the repayment of the loan funds advanced to the Defendants, and after a judicial determination of the amount that must be tendered by the Defendants.

1

In response, the Defendants counterclaimed for rescission under 15 U.S.C. § 1635. The Defendants claim their right to rescind extends for a period of three years from the date the loan was closed – not the usual three days – and base that claim on the following alternative grounds: (1) at closing they were given an insufficient number of the notice of rescission forms ("Rescission Notice"); (2) corrected TILA disclosures were not provided to the Defendants after the error was discovered; or (3) even if corrected disclosures were provided, new Rescission Notices did not accompany the corrected disclosures. The Defendants also assert that the facts do not support the "bona fide error" defense under 15 U.S.C. § 1640, and in any event that defense does not apply to the rescission remedy under TILA. In addition to rescission, the Defendants also seek statutory damages, actual damages, forfeiture of the loan proceeds, costs, and attorney fees for Sensible's failure to perform once the rescission demand was made.

After trial and submission of authorities, this proceeding was taken under advisement. For the reasons that follow, the Court finds that the Defendants are not entitled to any relief under TILA, including rescission.

## **Jurisdiction**

This Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the General Order of Reference, as amended, entered by the United States District Court for the Northern District of Alabama. This is a core proceeding, as it relates to the Debtor, pursuant to 28 U.S.C. § 157(b)(2)(B), (b)(2)(C), and (b)(2)(K). The proceeding is a "related to" proceeding with regard to Mrs. Thomas, a non-debtor, insofar as a determination of her right to rescind will necessarily have an effect on Sensible's claim in the Debtor's underlying chapter 13 case (at least as to a determination of whether Sensible is entitled to a fully secured claim), and will, therefore, have a conceivable effect on the bankruptcy estate. *See Miller v. Kemira, Inc. (In re*

*Lemco Gypsum, Inc.)*, 910 F.2d 784, 788 (11th Cir. 1990). And perhaps most significant, Mrs. Thomas asserted the counterclaim with her Debtor-husband, and she specifically consented to this Court's entry of final orders and judgments. Accordingly, the Court finds it has jurisdiction to enter final orders and judgments in this proceeding as to all parties. The following constitutes the Court's findings of fact and conclusions of law under Rule 7052(a) of the Federal Rules of Bankruptcy Procedure.

**Findings and Conclusions**

All parties agreed the original TILA disclosures given to the Defendants at the loan closing on November 24, 2010 incorrectly included a $750 origination fee in the "Amount Financed" disclosure-box rather than in the "Finance Charge" box. There was no contention that the omission of the origination fee from the "Finance Charge" and its inclusion in the "Amount Financed" in the original disclosure was intentional.[1] The error was later brought to the attention of Sensible during an audit by the State Banking Department. On December 30, 2010, Sensible mailed a corrected TILA disclosure statement to the Debtor, but not Mrs. Thomas, along with a brief letter of explanation. Def. Ex. 1; Pl. Exs. 15 and 16. The correction that added the origination fee to the "Finance Charge" did not require changes to the annual percentage rate, monthly payments or total payments, as those items had been correctly disclosed on the original TILA disclosure given at closing.

In addition to their claims based on the erroneous disclosure of the origination fee, the Defendants claimed that at the loan closing on November 24, 2010 they received only one copy each of the Rescission Notice. Regulation Z, promulgated by the Board of Governors of the

---

[1] The $750 loan origination fee was conspicuously disclosed in the itemization of charges on the original TILA disclosure form. In other words, there was no attempt to hide the fact that the Defendants were being charged the fee.

3

Federal Reserve pursuant to TILA, requires a lender to provide each consumer borrower with two copies of the Rescission Notice – one to keep and one to send to the lender if rescission is elected. 12 C.F.R. § 226.23(b)(1).

If the required number of Rescission Notices are provided to a borrower at closing, the right to rescind expires at midnight of the third business day following closing. 15 U.S.C. § 1635(a). When an insufficient number of Rescission Notices are provided, as a general rule, a borrower's right to rescind expires three years after closing. *Id*. at § 1635(f). A written acknowledgement of receipt of adequate TILA disclosures, including Rescission Notices, creates a rebuttable presumption of delivery. *Id*. at § 1635(c).

The evidence established that two separate originals of the Rescission Notice were signed by the each of the Defendants at closing, and in those originals the Defendants acknowledged they each received two copies. The Debtor's testimony that he did not remember getting two copies, and did not have two copies with his "important papers," was not sufficient to overcome the import and presumption of the signed statements to the contrary executed at the closing. Pl. Exs. 11 and 12. Indeed, the Debtor's memory was called into question when he initially denied having signed two originals, but then admitted that the signatures on each of the two Rescission Notices, although not identical, were in fact his.[2] The signatures not being identical, but both belonging to the Debtor, proved two originals were signed. In addition, Sensible's loan officer, Mr. Leach, who closed the loan, testified that at the closing two copies of the Rescission Notice were provided to each of the Defendants, along with their copies of the other loan documents. Essentially, the Debtor is saying one thing and Sensible's representative is saying another. The presumption of receipt arising under § 1635(c) from the Defendants' written acknowledgement

---

[2] The parties stipulated to the authenticity of the exhibits prior to trial, including the two copies of the Rescission Notices.

4

they received the required number of copies was not overcome by the Debtor's less than credible testimony to the contrary. Sensible complied with the Rescission Notice requirements of Reg Z and § 1635, and the Defendants' right to rescind the transaction was not extended to three years.

Next, the Court will address the Defendants' argument that rescission should nevertheless be allowed for a period of three years from the closing date because the disclosure of the $750 origination fee was erroneous. The parties do not seriously dispute that this error was material, and the Court finds that for TILA purposes, the error was in fact material. Nonetheless, inasmuch as the deficient disclosure was the result of a bona fide error falling within the safe harbor provided by 15 U.S.C. § 1640(c), once the three-day right to rescind expired under § 1635, it was not revived or extended as a consequence of that error. The operative TILA section provides:

> (c) Unintentional violations; bona fide errors
>
> A creditor or assignee may not be held liable in any action brought under this section or section *1635* [rescission] of this title for a violation of this subchapter if the creditor or assignee shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error. Examples of a bona fide error include, but are not limited to, clerical, calculation, *computer* malfunction and *programing*, and printing errors, except that an error of legal judgment with respect to a person's obligations under this subchapter is not a bona fide error.

15 U.S.C. § 1640(c) (emphasis added).

Sensible's representative, Mr. Leach, testified that before Sensible began extending consumer loans, he consulted with a computer programmer who was instructed to write a program for TILA disclosures. Leach furnished the programmer with TILA-compliant disclosure forms and instructed him to fashion a program that would generate those same disclosures for loans Sensible anticipated making to its customers. Despite those instructions, the programmer created a program that erroneously placed loan origination fees in the wrong

5

disclosure block.  Mr. Leach further testified that he reviewed the program after its implementation but did not discover the error.

In an effort to avoid documentation errors, Sensible's internal procedures required Leach to personally review loan documents before each closing in an effort to identify incorrect TILA disclosures.  Leach testified that he followed that procedure for the Defendants' loan and, although he failed to catch the misplaced disclosure of the origination fee, the error was unintentional.  According to Leach, other loans (fewer than ten) were closed with similar errors prior to the state audit during which the programming error was discovered. Leach was Sensible's Regional Manager at the time he closed the Defendants' loan, was familiar with TILA disclosure requirements, had worked in consumer credit for over twenty years, and was licensed by the State of Alabama as a Mortgage Loan Originator.

The Court finds that the incorrect disclosure of the origination fee in the Defendants' initial loan documents was the result of an unintentional bona fide computer programming error. Although that error was not identified and was not corrected before closing (if it had been, the Defendants would have had no colorable TILA claims), the procedure under which Leach reviewed TILA documents before closing was, nonetheless, reasonably adapted to avoid incorrect disclosures.  Accordingly, because the erroneous TILA disclosure in the initial loan documents was caused by a programming error, the Court concludes that the bona fide error defense provided in § 1640(c) insulates Sensible from exposure to TILA remedies, including rescission and damages.

The Defendants and Sensible cite *In re Gordon*, 389 B.R. 243 (Bankr. N.D. Ala. 2008) in support of their respective positions.  The Court finds that the facts in the instant case are similar to those in *Gordon*, in which case Judge Caddell examined procedures whereby the creditor's

6

Case 12-40029-JJR    Doc 45    Filed 05/10/13    Entered 05/10/13 13:55:20    Desc Main
Document      Page 6 of 9

closing employee, and then the managing bookkeeper, reviewed the disclosures for errors, and found that procedure to be reasonably adapted to avoiding the error in that case (which was a failure to include the annual percentage rate in the written disclosures). In the case now before this Court, Sensible's Regional Manager was the closing employee, and it was his procedure to personally review loan and disclosure documents before their execution. It cannot be the standard for a procedure to be reasonable, that it must always catch every error. Rather, the procedure must be reasonably adapted to catch the bona fide error that nonetheless slips through. The Court finds the error-avoiding procedure adopted and followed by Sensible, while admittedly not perfect, satisfied the requirements of § 1640(c).

The Defendants complain that new Rescission Notices were not transmitted with the corrected disclosures, and that the corrected disclosures were addressed only to the Debtor and not to Mrs. Thomas. That appears to be true. However, those facts change nothing insofar as the Defendants' TILA claims are concerned. The bona fide error defense provides total insulation from the remedies available under § 1635 (rescission) and §1640 (damages) when the underlying problem was due to an unintentional bona fide error. Because the Court has already found the misplacement of the origination fee in the original documents was a bona fide error, the rescission remedy under § 1635 is not available to the Defendants.[3] Additionally, because the

---

[3] Ignoring for a moment the bona fide error defense, and assuming the rescission remedy were otherwise available, the Court would require tender as a condition of rescission, under the guidance of *Williams v. Homestake Mortgage Co.*, 968 F.2d 1137 (11th Cir. 1992). The Court finds the Defendants' ability to tender a return of the loan proceeds has not been established. The Debtor's schedules confirm as much, and Mrs. Thomas offered no evidence of her wherewithal to provide the necessary cash. The only offer of tender made in this case is the Debtor's testimony that he would pay the amount owing under his chapter 13 plan to Sensible as a secured creditor. However, the confirmed chapter 13 plan provides that Sensible will be paid as secured only if it has an allowed secured claim, which it would not have were the security interest voided under rescission. The plan proposes no payment to unsecured creditors, and provides that any funds received from the lawsuit against Sensible will be "applied to his chapter 13 [plan]." Pl.

7

error was bona fide, the defense arising therefrom was available to Sensible without resort to the "corrected disclosure" protection provided under § 1640(b). In other words, because Sensible was entitled to rely on the bone fide error defense, there was no requirement for Sensible to provide corrected disclosures to the Defendants. Although a corrected disclosure was sent to the Debtor, no new TILA claims arose or were revived as a consequence thereof.[4]

---

Ex. 18. Defendants have not shown that they could tender the amount of loan proceeds that would not otherwise be offset, even under the best-case scenario. Defendants' counsel urges the court to allow tender over time based upon the Court's equitable powers, were rescission otherwise available. A similar proposal was rejected by the District Court in *Zimmerman v. Logemann*, 2011 WL 1674956 (W.D. Wis. 2011) (citing *Williams, supra*), in which the court found that such a proposal did not establish that rescission would be anything other than a futile remedy. Payment over time, whether through a chapter 13 plan or otherwise, is not a sufficient tender. The majority of courts to address the rescission issue, including the Eleventh Circuit in *Williams, supra*, have held that the court may condition the lender's tender requirement "upon terms that would be equitable and just to the parties in view of all surrounding circumstances" with the goal of rescission being the restoration of the parties to the *status quo ante*. *Williams,* 968 F.2d at 1141-42. *See also Yamamoto v. Bank of N.Y.*, 329 F.23d 1167 (9th Cir. 2003) (rescission remedy could be conditioned upon borrower's tender of loan proceeds less finance charge and penalties). The Defendants in the instant case have made no showing of their ability to tender a refund of the loan proceeds, which would be required by the Court in this case were it to reach that issue. Therefore, even if rescission were an available remedy, no damages would flow from the failure of Sensible to tender within twenty days of receipt of the June 1, 2012 rescission letter, which was not self-effectuating insofar as it was contested by Sensible. The point is moot, however, given the Court's ruling herein that the bona fide error defense applies.

[4] 15 U.S.C. § 1640(b) provides in part:

(b) Correction of errors

A creditor or assignee has no liability under this section or section 1607 of this title or section 1611 of this title for any failure to comply with any requirement imposed under this part or part E of this subchapter, if within sixty days after discovering an error . . . the creditor or assignee notifies the person concerned of the error and makes whatever adjustments in the appropriate account are necessary to assure that the person will not be required to pay an amount in excess of the charge actually disclosed . . . .

Had the error not been a bona fide error, then Sensible's compliance with 15 U.S.C. § 1640(b), and the limited protection provided thereunder, would be relevant. Although the Defendants agreed in closing argument that they are not seeking damages as a result of the alleged errors

**Conclusion**

For the reasons stated above, it is hereby ORDERED that:

(1) Sensible's mortgage encumbering the Defendants residence is NOT subject to rescission by the Defendants under TILA;

(2) The Defendants are not entitled to recover damages or any other relief under their counterclaim;

(3) To the extent stated in paragraphs (1) and (2) above, the declaratory relief sought by Sensible in its complaint is granted;

(4) Costs are taxed as paid; and

(5) This adversary proceeding shall be closed by the Clerk after the time for appeal has expired, if no appeal is taken.

So Ordered: May 10, 2013

/s/ James J. Robinson
JAMES J. ROBINSON
U.S. Bankruptcy Judge

---

with the corrected disclosures, the Court would also point out that to allow rescission based upon the failure to include new notices with the corrected documents would have the anomalous result of placing the creditor in a worse position for having attempted to correct the disclosures than if it had done nothing upon realizing its error. Otherwise creditors would have no incentive to ever take any action to correct an error, lest in doing so they create a "new" violation upon which a rescission claim could be bootstrapped. This is contrary to the intent and purpose of TILA, which is to "assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices," 15 U.S.C. § 1601(a), and would be contrary to this Court's reading of 15 U.S.C. § 1640(c).

9